# CASES

IN

# THE SUPERIOR COURT

OF

# PENNSYLVANIA

## Leuders v. Munyon Homœopathic Home Remedy, Company, Appellant.

*Contract—Sales—Affidavit of defense—Counterclaim—Practice, C. P.—Act of May 14, 1915, P. L. 483.*

In an action on book account for goods sold and delivered, where the defendant in the affidavit of defense admits the correctness of a book account, but sets up as a counterclaim damages for a loss caused by the failure of the plaintiff to deliver other goods specified in the contract, the court commits reversible error in making a rule for judgment absolute on the ground that the plaintiff admitted that the goods in suit had not been paid for, and plaintiff had there-fore, a right to rescind, if it appears that there was nothing in the counterclaim to show that the plaintiff had in fact rescinded for that reason, and the counterclaim discloses that the plaintiff had refused to deliver the remainder of the goods for another and en-tirely different reason.

In such a case the court commits error in entering judgment against the defendant because it failed to attach to its counter-claim two letters referred to and quoted in the counterclaim, if it appears that the reference in one of the letters, and the quotation from the other, were merely statements of the source of the de-fendant's information on which it based its counterclaim, and merely related to evidence which might become material on the trial.

Where a counterclaim filed prior to January 1, 1916, is sufficiently stated under the law as it then existed, the court commits reversible

error in entering judgment against the defendant because the counterclaim did not contain all the averments required by the Practice Act of May 14, 1915, P. L. 483, which did not go into effect until January 1, 1916.

Argued Oct. 2, 1917. Appeal, No. 96, Oct. T., 1917, by defendant, from order of C. P. No. 3, Philadelphia Co., Sept. T., 1914, No. 3157, making absolute rule for judgment for want of a sufficient affidavit of defense in case of George Leuders & Company v. Munyon Homœopathic Home Remedy Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit on book account for goods sold and delivered.

The affidavit of defense admitted the correctness of the book account in the statement, but averred that "Defendant has a set-off in damages for breach of the contract for which goods charged in plaintiff's statement is a part shipment, and a counterclaim against plaintiff, to recover for loss sustained by defendant for breach of the identical contract for which suit is brought of the following nature and character:

"SET-OFF AND COUNTERCLAIM.

"1. Defendant avers that on September 3, 1913, plaintiff and defendant entered into a written contract as follows:
" 'Contract #21
" 'No. 2332          New York, September 3rd, 1913.
" 'George Leuders & Co.
  " 'P. O. Box 1498
    " 'New York

" 'CONTRACT.

" 'Sold to Munyon's Homœopathic Home Remedy Co.,
" 'Philadelphia, Pa.
" 'The following goods subject to terms and conditions as stated below:

| ARTICLE | QUANTITY | PRICE |
|---|---|---|
| Soap Perfume | 5,000 lbs. | $1.67½ lb. flat |

" 'Remarks. It is guaranteed that the quality of this perfume will be according to the deliveries made between April 28th and September 1st, and any difference in quality shall not be more than is customarily found between fresh compounded oils and the same compound when aged.

" 'Terms: as usual

" 'Delivery: During 1913 and 1914

" 'Shipments to be in about equal proportions over the life of this contract. Sellers not to be held liable for larger deliveries than would be proportionate if the quantity were entered for equal monthly or quarterly shipments.

" 'Sellers not liable for contingencies beyond their control, or unavoidable accidents.

" 'Accepted: George Leuders & Co.

" 'Munyon Homœopathic Home Remedy Co.
" 'James M. Munyon.'

"2. During the time of the performance of plaintiff's contract with defendant, defendant was ready and willing at all times to perform its part of said contract but on August 11, 1914, plaintiff notified defendant by letter that it considered the contract cancelled, and would not ship the remaining amount of perfume contracted for because the conditions in Europe made it impossible to get the ingredients.

"3. On August 15, 1914, plaintiff wrote defendant, among other things, as follows:

" 'There is no contract between us any more. You

can buy goods if you will send us remittance in advance. The mixture which we supplied you under the former contract would cost for the present $2.50 for a limited quantity. We say limited quantity, because quite a number of the ingredients are at present unobtainable from Europe, and a number of them coming from Germany will not be obtainable for a great length of time. We, therefore, could not fill your contract even if we wanted to.'

"That plaintiff has since August 15, 1914, failed and refused to deliver any part of the goods remaining due defendants under their contract of September 3, 1913.

"4. That by reason of plaintiff's breach of its contract of September 3, 1913, defendant has been compelled to go out into the open market and buy its perfumes at an increased price over its contract with plaintiff as set forth above.

"5. That on April 27, 1914, plaintiff wrote defendant as follows:

" 'New York, April 27, 1914.
" 'Munyon's Homœopathic Home Remedy Co.,
" '53rd & Jefferson Streets,
" 'Philadelphia, Pennsylvania.
" 'Gentlemen:

" 'We have your letter of the 25th inst.

" 'You did not read our letter carefully. We stated that if we were mixing the old perfume with the new and balancing thereby shipment on account of the new contract, it would mean that only 109 lbs. had been shipped, which results as follows:

" 'We shipped on the new contract 471 lbs., and the balance of the old contract is 362 lbs. Therefore, adding the old mixture to the new, it would mean that 109 lbs. have been delivered.

" 'The old contract was made for 3000 lbs., the deliveries amount to 2638 lbs., leaving the balance of 362 lbs. of the old mixture, which has been reported to you on many occasions in our previous letters.

" 'We hope now you will be able to arrange matters in accordance with our letter of the 24th.

" 'Yours very truly,

GL/ME                 " 'George Leuders & Co.'

"That by the plaintiff's own statement there is due under their contract 4891 pounds of perfume which defendant has been compelled to buy and did buy in the open market at an increased price of $1.00 a pound; wherefore, there is justly due the defendant from the plaintiff the sum of $4,891 with legal interest from August 15, 1914, for which sum together with the cost of this action defendant will demand a certificate in its favor upon the trial of this cause.

"Wherefore, defendant claims of plaintiff the sum of $4,891."

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*Henry J. Scott,* for appellant: Samuel v. Sota, 41 Pa. Superior Ct. 630.

*Arthur F. Schneider,* for appellee, cited: Reyvold v. Voorhees, 30 Pa. 116; Rugg v. Moore, 110 Pa. 236; Easton v. Jones, 193 Pa. 147; Forsyth v. Oil Co., 53 Pa. 168; Erie City v. Butler, 120 Pa. 374; Reilly v. White, 234 Pa. 115; Young v. Lloyd, 65 Pa. 199; Kittanning Plate Glass Co. v. Krakovitz, 56 Pa. Superior Ct. 623.

OPINION BY HENDERSON, J., March 2, 1918:

This appeal is from the judgment of the court below holding the affidavit of defense to be insufficient. The affidavit does not deny the accuracy of the plaintiff's account but contains a statement of a counterclaim from which it appears that the plaintiff had entered into a contract in writing with the defendant for the sale of five thousand pounds of soap perfume the principal part of which the plaintiff had neglected and refused to de-

liver, by reason whereof the defendant was compelled to procure a supply from another dealer at an increased cost of one dollar a pound. The affidavit is, therefore, the statement of a cause of action to be used as a counterclaim against the plaintiff's account and the question for determination is whether a cause of action is sufficiently set forth by the defendant. It is not necessary, therefore, to consider whether the essentials of an affidavit in denial of the plaintiff's right of action have been disclosed. If the defendant has answered with a declaration of a state of facts which would support an action he has met the issue tendered by the plaintiff and is entitled to a trial. The contract between the parties is set out in the affidavit. It is also set forth that 109 pounds of the perfume had been delivered on the contract and that the plaintiff had refused to further perform alleging that some of the ingredients of the material could not be obtained from Europe and that a number from Germany could not be obtained for a great length of time and that the plaintiff, therefore, could not fill the contract if it wanted to. It is further set forth that by reason of this default of the plaintiff the defendant was compelled to go into the open market and buy its perfumes at an increased price of one dollar a pound, the additional cost to the defendant amounting to $4,891, for which the defendant claimed a certificate in its favor.

The court below based its judgment on three conclusions: (1) That the defendant's admission that he purchased the goods as set forth in the plaintiff's statement is in effect an acknowledgment of a default as to payment according to the terms of the bill and that therefore the plaintiff had a right to rescind. It is to be observed, however, that nothing in the plaintiff's statement or the statement of counterclaim shows that the plaintiff rescinded the contract on that account. On the contrary, the counterclaim shows an entirely distinct reason for the failure to perform its contract. Moreover, it appears from the pleadings that former sales had been

made by the plaintiff to the defendant under a contract and that the plaintiff had not completed delivery under that contract and it would seem from the plaintiff's letter of April 24, 1914, quoted at length in the counterstatement that the plaintiff treated a part of the shipments for which payment is sought as applicable to that contract leaving only 109 pounds to apply on the contract of September 3, 1913. Under the last contract shipments were to be made: "In about equal proportions over the life of this contract; sellers not to be held liable for larger deliveries than would be proportionate if the quantity were entered in equal monthly or quarterly shipments." No provision for time or manner of payment is made in this contract except in the following form:

"Terms: As usual." If all of the shipments for which the plaintiff claims were to apply on the old contract except 109 pounds it does not appear that the plaintiff performed according to the terms of the agreement set up by the defendant and in that case a default by the defendant could not be successfully alleged. Whether the plaintiff could sustain a rescission of the contract on which the defendant relies for the reason that prompt payment had not been made for the shipments set forth in the statement of claim it is not now necessary to consider for there is no allegation in the case that it made that a reason for refusal to deliver according to the contract. We think, therefore, the court was not warranted in assuming that there had been a breach of the contract by the defendant and that there had been a rescission by the plaintiff on that account.

The second reason for entering the judgment was that the plaintiff's counterclaim referred to a letter from the plaintiff to the defendant dated August 11, 1914, without attaching a copy of the letter and that paragraph three of the counterclaim contains a quotation from another letter dated August 15, 1914, without quoting other matters apparently contained in the letter. An examination

of the counterclaim shows that the reference to the letter in the second paragraph and the quotation from another letter in the third paragraph are statements of the source of the defendant's information on which he bases his counterclaim. They relate to evidence that might become material on the trial of the case but the counterclaim is good in this respect without regard to these parts of the statement. There is a specific averment that the plaintiff failed and refused to deliver any part of the goods remaining due to the defendant under their contract of September 3, 1913, and that by reason of the plaintiff's obligation the defendant was compelled to supply the goods by purchase in the open market.

The final criticism of the affidavit is that the Practice Act of 1915 has not been complied with in that it does not aver when or in what market or from what persons the defendant bought goods to take the place of those the plaintiff failed to deliver. It is sufficient to say with reference to the Act of 1915 that it did not take effect until the first of January, 1916, and the statement of claim and the affidavit of counterclaim were filed prior to that date. The sufficiency of the counterclaim must be determined therefore, by the requirements of the law at the time it was filed. It was necessary for the defendant to make a concise statement of his demand; to give the date of the promise on which his demand is founded; to state the whole amount he believes justly due him from the plaintiff and to accompany his statement with a copy of the contract on which his claim is based. All this has been done by the defendant in his affidavit to which he has added the breach of contract occasioning his cause of action. It is not necessary that he state the evidence on which he relies. A statement which furnishes information of the plaintiff's claim so that the defendant can prepare for and present his defense is sufficient where the statutory directions as to the substance of the statement are complied with. The character of the defendant's counterclaim is made clear in his aver-

ment that the plaintiff failed to comply with his obligation in its performance and that by reason of this default it was necessary for the defendant to go into the public market and procure the merchandise which the plaintiff had undertaken to furnish him.   The extent of the default and the exact amount of the damage arising from the difference between the price for which the goods were contracted and that which the defendant was compelled to pay are plainly set forth.   The price which the defendant paid is averred to be that for which they were sold in the open market and that is prima facie the value of the goods.   Whether the evidence will sustain the defendant's averments is a matter to be ascertained at the trial, but we regard the counterclaim as a sufficient statement of a cause of action to prevent judgment for want of a sufficient affidavit of defense.

The judgment is reversed with a procedendo.